UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THERESA WILLIAMS,

                     Plaintiff,

    v.                                           **DECISION AND ORDER**
                                                                  08-CV-369S

HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY,

                     Defendant.

## I. INTRODUCTION

Plaintiff Theresa Williams brings this action *pro se* under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., against Defendant Hartford Life and Accident Insurance Company, seeking to recover long-term disability benefits ("LTD benefits") she alleges were wrongfully terminated. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331

Presently before this Court is Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff opposes Defendant's Motion.[2] For the reasons discussed below, Defendant's Motion is granted.

---

[1] In support of its motion, Defendant filed an Affidavit of James A. Powell, with an attachment, a Rule 56.1 Statement of Undisputed Material Facts, a memorandum of law, a Rule 56.2 Notice to *pro se* Plaintiff regarding its summary judgment motion, and a reply memorandum of law. (Docket Nos. 23-27, 47.)

[2] After receiving five separate extensions of time to file her response to Defendant's Motion (Docket Nos. 31, 35, 38, 40, 46), Plaintiff filed a "Memorandum in Support of Plaintiff's Motion for Summary Judgment on the incorrectness [sic] of the Administrative Record." (Docket No. 44.) Plaintiff also filed a "Motion for Reconstruction of Plaintiffs [sic] Summary Judgment Conclusion." (Docket No. 45.) Because Plaintiff has not filed a Motion for Summary Judgment, and "reconstruction" of a "summary judgment conclusion" is not a legally cognizable form of relief, this Court has considered Plaintiff's submissions as a response to Defendant's Motion.

1

## II.  BACKGROUND

**A.    Facts**

The following material facts are undisputed and taken from the parties' submissions, including the administrative record, exhibits, affidavits, and Defendant's Local Rule 56.1 statements of facts.[3]

On March 24 1980, Plaintiff began employment with "Entergy Corporation's Arkansas Power & Light Company."  (Def's Statement, ¶ 10[4]; AR 528[5].)  Through her employment, Plaintiff participated in, and was subject to Entergy Corporation's Long Term Disability Plan ("Plan").  (Def's Statement, ¶ 11.)  The Plan was issued and insured by Defendant through a "Group Insurance Policy" ("the Policy").  (Def's Statement, ¶ 1, 11.)

**1.    The Policy**

The Policy provides long-term disability benefits ("LTD benefits") to employees of Entergy Corporation who are "totally disabled."  (Def's Statement, ¶ 5.)  Under the Policy, an employee is considered "totally disabled" if:

> [D]uring the elimination period[6], and for the next 24 months, you are

---

[3] Because Plaintiff did not submit a statement of the material facts as to which she contends there are genuine issues to be tried, this Court has accepted Defendant's Statement of Material Facts Not in Dispute to the extent Plaintiff has not controverted them in her submissions.  See Local Rule 56.1(c) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted).

[4] Referring to Defendant's Statement of Material Facts Not in Dispute, which contains citations to the record evidence.  (Docket No. 25.)

[5] "AR" refers to the "Administrative Record," which was filed under seal in the Clerk's Office (Docket No. 13), and "528" refers to the specific page number within the AR.

[6] The "elimination period" is defined as "the period of time you must be Totally Disabled before benefits become payable."  (AR 178.)

prevented by Disability[7] from doing all the material and substantial duties of your own occupation.

After that, and as for as long as you stay Totally Disabled, you are prevented by Disability from doing any occupation or work for which you are or could become qualified by training, education, or experience.

(Def's Statement, ¶ 6; AR 180-81.)

Pursuant to the Policy, employees who are totally disabled are paid LTD benefits until they are "no longer disabled," or until they "fail to furnish proof that [they are] continuously Disabled."  (Def's Statement, ¶ 8; AR 174.)  Additionally, the Policy also contains a provision through which employees may appeal any denial of claims for LTD benefits.  (AR 178.)

### 2. Plaintiff's Medical Issues

In January 1994, Plaintiff developed chest pain. (Def's Statement, ¶ 12.)  She was eventually diagnosed with "costochondritis," and less than one year later, on June 27, 1994, she stopped working because of her chest pain.  (Def's Statement, ¶¶ 12-13.)

In October 1994, Plaintiff submitted an application to Defendant for LTD benefits. (Def's Statement, ¶ 14.)  Although her application was originally denied (Def's Statement, ¶ 19), on February 5, 1999, Defendant approved Plaintiff's application following a number of appeals.  (Def's Statement, ¶¶ 20, 25, 36-38.)  Thereafter, Plaintiff began receiving LTD benefits.  (Def's Statement, ¶¶ 38, 40.)[8]

---

[7] The Policy defines "Disability" as "any accidental bodily injury, sickness, or pregnancy."  (AR 178.)

[8] Defendant also indicated that it would pay all "back-due" benefits owed to Plaintiff.  (Def's Statement, ¶ 39.)

### 3. Defendant's Decision to Terminate Plaintiff's LTD Benefits

By letter dated August 11, 2004, Defendant informed Plaintiff that it was conducting a review of her benefits in order to determine if she continues to meet the Policy's definition of "total disability." (Def's Statement, ¶ 41; AR 200-01.) As a result, Defendant asked Plaintiff to provide it with updated medical information. (Def's Statement, ¶ 41; AR 200-01.)[9] Defendant also asked Plaintiff to sign and complete a document entitled the "Authorization to Obtain and Release Information." (AR 200.) Lastly, Defendant informed Plaintiff that if it did not receive the information by September 1, 2004, a decision would be based on the evidence it had on file, which would result in the termination of LTD benefits. (AR 200.)

Defendant received additional information related to Plaintiff's LTD claim. (AR 66.)[10] Then, by letter dated May 17, 2005, Defendant informed Plaintiff that she no longer meets the definition of "total disability" and, as a result, her LTD benefits were terminated, effective immediately. (Def's Statement, ¶¶ 42-43; AR 65-71.) In its letter, Defendant cited 22 documents and other pieces of evidence it considered, including:

- Video Surveillance – showing Plaintiff driving an automobile, walking, "walking at a rapid pace," raising her arms above her shoulder, bending at the waist, moving her neck, and crossing her arms across her chest without

---

[9] The August 11, 2004 letter indicates that Defendant had previously requested medical and other information from Plaintiff but that she had not provided Defendant with any of the requested information. (AR 200.) Thus, although Defendant clearly requested information from Plaintiff prior to August 11, 2004, based on the information contained within the record, this Court cannot determine how much earlier Defendant made its request.

[10] It is unclear whether Plaintiff sent additional information to Defendant, or if Plaintiff authorized the release of certain medical information. In any event, it is clear that Defendant possessed additional information post-dating its August 11, 2004 letter. (AR 66.)

any visible signs of discomfort. (Def's Statement, ¶ 48, pp. 8-9.)[11]

- Social Security Administration Determination Letter dated October 30, 1998 – although the letter awarded Plaintiff Social Security benefits, it noted that she "has the residual functional capacity to perform the requirements of work except for lifting and carrying more than five pounds, sitting and standing more than two hours in an eight-hour work day, bending, reaching, pushing pulling." (Def's Statement, ¶ 47.)

- Interview with Hartford Investigator on November 15, 2004 – Plaintiff informed the interviewer that she was taking several college courses at Erie Community College with the hope that she could work in an administrative position. (Def's Statement, ¶ 49, p. 10.)

- Plaintiff's Continuing Disability Statement dated November 15, 2004 – Plaintiff stated that, despite her claims of pain and disability, she was not involved in any treatment or therapy, did not use any special equipment to move around, and had only seen one physician in the preceding 12 months, Dr. Kenneth L. Gayles, her primary care physician. (Def's Statement, ¶ 51, p. 10.) Plaintiff also stated that she was able to attend to her own daily activities. (Def's Statement, ¶ 51, p. 11.)

- Plaintiff's Emergency Room Visit on May 13, 2004 – although Plaintiff was seen in the emergency room of Buffalo General Hospital because of her complaints of "sharp" chest pain, she was discharged, given a prescription for pain medication, and the medical tests were "unremarkable." (Def's Statement, ¶ 58.)

- Independent Medical Record Review by Dr. Eric Hermansen on April 13, 2005 – in a conversation between Dr. Gayles and Dr. Hermansen, as recaptured by Dr. Hermansen[12], Dr. Gayles reported that Plaintiff's chronic obstructive pulmonary disease was not causing her any physical problems or limitations, and that a stress test performed on November 30, 2004 was interpreted as normal. (Def's Statement, ¶ 61, p. 16; AR 141-42.)

- Dr. Hermansen's Medical Report dated April 17, 2005 – Dr. Hermansen opined that, after reviewing Plaintiff's medical record, she is capable of full

---

[11] This Court has reviewed the video surveillance provided by Defendant, under seal, and has confirmed that the above-referenced description is accurate.

[12] Dr. Hermansen documented the details of the conversation in a letter addressed to Dr. Gayles, dated April 13, 2005. (AR 141-42.) In the letter, Dr. Hermansen requested that Dr. Gayles make any corrections or additions to the letter summarizing their conversation, if necessary. (AR 141-42.) Dr. Gayles, however, never made any such corrections or additions.

time employment. (Def's Statement, ¶ 62, pp. 19-20; AR 139.) Dr. Hermansen further opined that her costrochondritis and chest pain are documented only by her subjective complaints. (Def's Statement, ¶ 62, p. 19.) Lastly, Dr. Hermansen stated that "[c]ostrochondritis is typically a short course disease and not a disease of a chronic nature." (Def's Statement, ¶ 62, p. 19.)

- Employability Analysis Report dated April 27, 2005 – after considering Plaintiff's condition, as well as her work/educational history, there are a number of available jobs that Plaintiff could perform. (Def's Statement, ¶ 67, p. 22.)

Following Defendant's letter, Plaintiff requested additional time to file an appeal. (Def's Statement, ¶ 80.) Defendant granted her request, and set February 17, 2006, as the date by which she must submit information supporting her appeal. (Def's Statement, ¶ 81.)

In a letter dated February 17, 2006, Plaintiff stated that she wanted to "re-activate [her] claim," and that she also requested an explanation of the appeals process. (Def's Statement, ¶ 82; AR 59.) Defendant responded to Plaintiff's letter by informing her that she should "submit additional information to include copies of medical records and/or letters from your physicians" by April 3, 2006. (Def's Statement, ¶ 84; AR 50.) On April 3, 2006, Plaintiff faxed Defendant three documents discussing two medical consultations and a CT scan of Plaintiff's chest. (Def's Statement, ¶ 87.) The documents were authored by Dr. Jerry J. Tracey, III, and they were dated October 28, 2005 (AR 43-45), January 6, 2006 (AR 46-48), and March 14, 2006 (AR 49).

After reviewing the foregoing information, Defendant issued a final administrative appeal decision on April 4, 2006, terminating Plaintiff's LTD benefits. (Def's Statement, ¶ 91; AR 38-39.) In addition to referring Plaintiff to the reasons contained in its letter dated May 17, 2005 (AR 38-39), Defendant explained that Dr. Tracy's medical records did not

6

provide any additional evidence to substantiate her claim of total disability (Def's Statement, ¶¶ 98-98; AR 39). In fact, Defendant noted that "the record dated October 28, 2005 reflects that you are capable of 'doing some light to moderate household task [sic]' thereby support that you would at least be capable of performing non-strenuous sedentary work similar to the occupations identified in the vocational analysis." (Def's Statement, ¶ 99; AR 39.)

Following this decision, Plaintiff brought the instant lawsuit alleging that Defendant wrongfully terminated her LTD benefits. Plaintiff seeks to recover benefits pursuant to ERISA section 502(a)(1)(B), *as amended*, 29 U.S.C. § 1132(a)(1)(B). (Docket No. 1, Pl's Compl. ¶ 5.) Thereafter, Defendant moved for summary judgment.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn

7

from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.    ERISA Standard**

Pursuant to ERISA, a plan participant may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

It is well-settled that the "denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989)) (brackets in original). "In applying the *de novo* standard, this Court reviews 'all aspects of the denial of [the claim], including fact issues to determine for itself whether the claimant should be granted or denied the requested relief." Lijoi v. Continental Cas. Co., 414 F. Supp. 2d 228, 238 (E.D.N.Y. 2006) (internal citations omitted).

Once the Court has determined that the *de novo* standard applies, it must next

determine the scope of the review. Lijoi, 414 F. Supp. 2d at 239. In other words, the Court must determine "whether the *de novo* review is limited to the record established by the administrator, or whether the *de novo* review essentially constitutes a new trial of plaintiff's claim giving the plaintiff the right to supply additional evidence to the court." Id. In order to allow a party to supply additional evidence, the Court must find "good cause." Id. (citing DeFelice v. Am. Int'l Life Assurance Co. of New York, 112 F.3d 61, 66 (2d Cir. 1997)); see also Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003) (explaining that the "presumption" to be applied by district courts in ERISA cases "is that judicial review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence").

**C.     Analysis**

Here, Defendant does not dispute that the *de novo* standard of review applies to this case. (Def's Mem, Docket No. 26, p. 26, n. 9.)[13] Further, since both parties have failed to address the scope of that review, this Court finds that good cause has not been demonstrated and, therefore, the review is limited to the information contained within the administrative record.

Having determined the appropriate standard of review, the scope of that review, and upon proper application of both, this Court finds no error in Defendant's decision to terminate Plaintiff's LTD benefits. Rather, this Court agrees with Defendant that Plaintiff is not "totally disabled," and in so finding, has primarily relied on the medical evidence,

---

[13] Although Plaintiff does not specifically address this issue, she argues that Defendant acted "in an arbitrary and capricious manner," thereby indicating that the lesser standard of review applies. (Pl's Mem, Docket No. 44, p. 3.) However, in light of Plaintiff's *pro se* status, coupled with Defendant's concession, this Court will review Defendant's decision to terminate Plaintiff's benefits under the more stringent, *de novo* standard of review.

9

Plaintiff's activities, and the employability analysis.

With respect to the medical evidence, Dr. Hermansen opined that Plaintiff was capable of full-time employment. (AR 139.) Dr. Hermansen also stated that costochondritis is a "short course disease," not one of "chronic nature." (AR 138.) In arriving at his conclusion, Dr. Hermansen conferred with Dr. Gayles, reviewed the medical records, and viewed the video surveillance. (AR 131-43.) Similarly, Dr. Gayles reported that: (1) Plaintiff's chronic obstructive pulmonary disease did not cause any physical limitations (AR 142), (2) a stress test performed on November 30, 2004 was "normal" (AR 141), (3) a echocardiogram report dated April 2, 2003 indicated that Plaintiff was "within normal limits" (AR 221), and (4) although an "exercise testing report" on April 2, 2003 found that she had "poor exercise tolerance," she had "no chest pain," and the test was negative for "myocardial ischemia" (AR 223).

Plaintiff, however, challenges Dr. Hermansen's medical evaluation because he: (1) "offered no in-person medical evaluation," (2) relied on the "tainted" video surveillance, (3) failed to inquire about the medicine prescribed by Dr. Gayles, and (4) failed to consider a car crash in which Plaintiff was involved. (Pl's Mem, Docket No. 44, pp. 3, 5, 10, 11.)[14] But these arguments are unpersuasive. First, Plaintiff provides no explanation as to how Dr. Hermansen's medical evaluation was inadequate because it was not based on a face-to-face interview. In fact, Dr. Hermansen largely relied on the information provided by Plaintiff's primary care physician, Dr. Gayles, when rendering his opinion. Second, Dr. Hermansen only partially relied on the video surveillance. And for the reasons discussed

---

[14] Although Plaintiff did not number the pages in her memorandum of law, this Court's reference to a page number is based upon its own page count.

below, this Court finds that the video surveillance is not "tainted." With respect to the last two arguments, Dr. Hermansen expressly noted that Plaintiff takes Aleve (AR 137), and he also considered Plaintiff's motor vehicle accident (AR 132).

Plaintiff also argues that Defendant's review of the medical evidence was flawed because it failed to credit the Social Security Administration's decision awarding her disability benefits. (Pl's Mem, pp. 5, 7.) However, a disability determination by the Social Security Administration is not binding on a long-term disability insurer. See, e.g., Kunstenaar v. Conn. Gen. Life Ins. Co., 901 F.2d 181, 184 (2d Cir. 1990) (statutory definitions of disability such as those governing the SSA are not binding on a district court engaged in de novo review of an ERISA Plan's denial of long-term disability benefits); Pagan v. Nynex Pension Plan, 846 F. Supp. 19, 21 (S.D.N.Y. 1994) ("Social Security determination are [] not binding on ERISA plans. . . ."). Moreover, because the Social Security Administration issued its decision on October 30, 1998, it provides only limited insight as to the state of Plaintiff's condition as of May 17, 2005.

With respect to Plaintiff's daily activities, Defendant correctly determined that her daily activities belied, rather than supported, her claim of total disability. (AR 67, 69.) For example, Plaintiff has been taking courses in accounting, blueprint reading, and criminal justice at Erie Community College and hopes to eventually secure an administrative position. (AR 67, 106.) Plaintiff also acknowledged that she attends to her own daily activities. (Def's Statement, ¶ 51, p. 11.) What is more, video surveillance observed Plaintiff walking at a fast pace, without an assistive device, entering and exiting a vehicle, driving, talking on a cell phone, interacting with other people, raising her arms above her shoulders, and crossing her arms across her chest without any visible signs of discomfort.

(AR 67; Docket No. 13, Ex. D.)[15]

Although Plaintiff challenges the video surveillance as "tainted" and insufficient to prove that she is not disabled, her challenge lacks merit. First, video surveillance is an acceptable method of determining whether a claimant is disabled and entitled to long-term disability benefits under a plan subject to ERISA. See Richard v. Fleet Financial Group Inc. Ltd. Employee Benefits Plan, No. 09 Civ. 2284, 2010 WL 625003, at *2 (2d Cir. Feb. 24, 2010.) Second, Plaintiff's benefits were terminated not only because of the video footage, but because the medical evidence as a whole did not support her claim. (AR 66-71.) Third, Plaintiff argues that the video footage is tainted because the person on the recordings is actually her mother, who walks with an assistive device. (Pl's Mem, p. 5.) However, because the person with an assistive device appears in the video only briefly, even if this person is Plaintiff's mother, by virtue of her limited appearance, it is clear that she was not the subject of the investigation. Rather, the individual who walks *without* an assistive device is the focus of the footage and by all indications this person appears to be Plaintiff.

Finally, this Court notes that an employability analysis revealed that, through her training, education, experience, and limitations, Plaintiff is capable of performing the duties of four specific occupations. In particular, Plaintiff could work as an "Electronics Worker, Atomizer Assembler, Assembler Small Products II, or Pre-Assembler Printed Circuit Board." (AR 70.) Thus, based on the foregoing, this Court agrees with Defendant that

---

[15] Although it is not possible to view the video footage by accessing the thirteenth entry on the docket, this entry merely indicates that Defendant has filed four exhibits under seal with the Clerk of the Court. Having reviewed this material, this Court notes that one of the exhibits, marked as exhibit D, is the video surveillance footage recorded on two compact discs.

Plaintiff is not "prevented [] from doing any occupation or work for which [she is] or could become qualified by training, education, or experience." (AR 181.)

## IV. CONCLUSION

For the foregoing reasons, and after viewing the evidence in the light most favorable to Plaintiff, this Court, having reviewed the administrative record *de novo*, finds no error in Defendant's decision to discontinue Plaintiff's LTD benefits. Accordingly, Defendant's Motion for Summary Judgment is granted. Further, Plaintiff's Motion for Reconstruction of Plaintiffs [sic] Summary Judgment Conclusion" is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 23) is GRANTED.

FURTHER, that Plaintiff's Motion for Reconstruction of Plaintiffs Summary Judgment Conclusion (Docket No. 45) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: April 6, 2010
      Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                              Chief Judge
                                      United States District Court